No. 25-4901

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

NATIONAL TPS ALLIANCE, *et al.*,
    Plaintiffs - Appellees,

v.

KRISTI NOEM, *et al.*,
    Defendants - Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

*AMICUS CURIAE* BRIEF OF FEDERATION FOR AMERICAN
IMMIGRATION REFORM IN SUPPORT OF DEFENDANTS-
APPELLANTS

CHRISTOPHER J. HAJEC
MATT A. CRAPO
JONATHON P. HAUENSCHILD
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
Telephone: (202) 328-7004
chajec@fairus.org
mcrapo@fairus.org
jhauenschild@fairus.org

Attorneys for *Amicus Curiae*
Federation for American Immigration Reform

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* Federation for American Immigration Reform makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

/s/ Christopher J. Hajec

i

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF AUTHORITIES ............................................................................... iii

INTEREST OF *AMICUS CURIAE*..........................................................................1

SUMMARY OF ARGUMENT ...............................................................................1

ARGUMENT ..........................................................................................................2

    I.    Secretary Noem's TPS actions were exercises of presidential authority and are therefore unreviewable under the APA ..............................4

    II.    This Court should harmonize the TPS statute with the President's inherent constitutional authority ................................................................7

    III.    The TPS statute precludes judicial review .....................................................8

CONCLUSION ......................................................................................................11

## TABLE OF AUTHORITIES

**CASES**

*Babb v. Wilkie*,
  589 U.S. 399 (2020) ..................................................................................... 9

*Bouarfa v. Mayorkas*,
  604 U.S. 6 (2024) ....................................................................................... 10

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*,
  333 U.S. 103 (1948) ..................................................................................... 3

*Crowell v. Benson*,
  285 U.S. 22 (1932) ....................................................................................... 7

*Dalton v. Specter,*
  511 U.S. 462 (1994) .................................................................................. 5, 6

*Detroit Int'l Bridge Co. v. Gov't of Can.,*
  189 F. Supp. 3d 85 (D.D.C. 2016) ............................................................... 6

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ..................................................................................... 6

*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1952) ..................................................................................... 3

*Hernandez v. Mesa*,
  589 U.S 93 (2020) ........................................................................................ 3

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018) ..................................................................................... 7

*McLaughlin Chiropractic Assocs. v. McKesson Corp.*,
  606 U.S. 146 (2025) ..................................................................................... 8

*Nishimura Ekiu v. United States*,
  142 U.S. 651 (1892) ..................................................................................... 3

*Patel v Garland*,
　596 U.S. 328 (2022) .................................................................................. 9

*Trump v. Hawaii*,
　585 U.S. 667 (2018) .................................................................................. 3

*Tulare Cty. v. Bush,*
　185 F. Supp. 2d 18 (D.D.C. 2001) ............................................................ 6

*United States ex rel. Knauff v. Shaughnessy*,
　338 U.S. 537 (1950) .................................................................................. 3

*United States v. Hansen*,
　599 U.S. 762 (2023) .................................................................................. 7

*United States v. Melgar-Diaz*,
　2 F.4th 1263 (9th Cir. 2021) ..................................................................... 4

*Weyerhaeuser Co. v. United States Fish & Wildlife Serv.*,
　586 U.S. 9 (2018) ...................................................................................... 8

**Statutes**

5 U.S.C. § 701 ................................................................................................ 8

8 U.S.C. § 1182 .............................................................................................. 4

8 U.S.C. § 1252 .............................................................................................. 9

8 U.S.C. § 1254a ........................................................................... 4, 8, 9, 10

**Other Authorities**

Executive Order 14159, "Protecting the American People Against Invasion,"
　90 Fed. Reg. 8443, 8446 (Jan. 29, 2025) ................................................. 5

# INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* Federation for American Immigration Reform (FAIR) is a nonprofit corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to inform the public about the effects of both unlawful and lawful immigration, and to defend American citizens, American workers, and the nation's environment by limiting overall immigration, enhancing border security, and ending illegal immigration. FAIR has been involved in more than 100 legal cases since 1980, either as a party or *amicus curiae*, with the aim of protecting all Americans against the substantial harms of mass migration and illegal immigration.

## SUMMARY OF ARGUMENT

The district court's order postponing the effective date of the Secretary of Homeland Security's termination of Temporary Protective Status (TPS) for Honduras, Nicaragua, and Nepal conflicts with both the text of the TPS statute and the President's constitutional authority. Secretary Noem's terminations and vacaturs of the extensions of those countries were not only permitted under the TPS statute but also were exercises of inherent Executive power under Article II of

---

[1] All parties consented to the filing of this brief. No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

the Constitution. Indeed, because Secretary Noem's actions were at the behest of the President, they are unreviewable under the Administrative Procedure Act (APA).

The district court's conclusion that the Executive Branch is precluded from reconsidering its prior determinations intrudes on the President's inherent authority, in overseeing foreign affairs, to exclude aliens from the United States. To avoid this conflict between the TPS statute and the Constitution, this Court should read the former, as is permissible, as not precluding such reconsideration.

Additionally, the district court erred when it determined that the APA applied to the Secretary's determinations to terminate protective status for Honduras, Nicaragua, and Nepal. The plain text of the TPS statute deprives courts of judicial review of such decisions. Accordingly, this Court should reverse the district court's order postponing the effective date of agency action.

## ARGUMENT

There is no question that the United States has a right inherent in its sovereignty to defend itself from foreign dangers by controlling the admission of aliens. "It is an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Nishimura Ekiu*

2

*v. United States*, 142 U.S. 651, 659 (1892). The President's authority over immigration and naturalization stems from his constitutional authority to superintend foreign relations and protect national security. *See, e.g.*, *Hernandez v. Mesa*, 589 U.S 93, 103-04 (2020) (declining to create a new *Bivens* remedy for the behavior of border patrol because it is a matter "relating to the conduct of foreign relations" and the Executive Branch "has the lead role in foreign policy"), *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (acknowledging that immigration related decisions "implicate relations with foreign powers or involve classifications defined in the light of changing political and economic circumstances"); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-589 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of republican form of government"); *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 109 (1948) ("The President . . . possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs"); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542-43 (1950) ("The exclusion of aliens is a fundamental act of sovereignty . . . inherent in [both Congress and] the executive department of the sovereign"); see also *id.* at 542 ("When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a

3

legislative power. It is implementing *an inherent executive power*.") (emphasis added); *United States v. Melgar-Diaz*, 2 F.4th 1263, 1268 (9th Cir. 2021) (holding that the exclusion of aliens is a "fundamental act of sovereignty" and is "inherent in the executive power.").

Indeed, Congress has acknowledged the President's inherent authority to exclude aliens in the nation's interest. *See* 8 U.S.C. § 1182(f) (implementing the President's authority, in the interests of the United States, to "suspend the entry of all aliens or any class of aliens" or "impose on the entry of aliens any restrictions he may deem to be appropriate"). Granted the President's inherent constitutional power, as Commander-in-Chief, to exclude aliens, it is far from a nullity even if exercised outside of the precise form of its implementation by Congress in 8 U.S.C. § 1182(f).

### I. Secretary Noem's TPS actions were exercises of presidential authority and are therefore unreviewable under the APA

On January 20, 2025, in exercise not only of his supervisory powers over the Executive Branch, but of his power to exclude aliens committed to him by the Constitution, President Trump directed Secretary Noem to "rescind the policy decisions of the previous administration that led to the increased or continued presence of illegal aliens in the United States," including "ensuring that designations of Temporary Protected Status are consistent with the provisions of section 244 of the INA (8 U.S.C. § 1254a), and that such designations are

4

appropriately *limited in scope* and *made for only so long as may be necessary* to fulfill the textual requirements of that statute." Executive Order 14159 at § 16, "Protecting the American People Against Invasion," 90 Fed. Reg. 8443, 8446 (Jan. 29, 2025) (emphasis added).

Because Presidents must always act through subordinates, whether an action is that of the President or the head of an agency, for purposes of APA reviewability, hinges not on whether agency personnel help perform a given action, but on whether the authority to take that action is entrusted to the President, whether by statute or in the Constitution, or delegated by Congress to an agency. *See, a fortiori, Dalton v. Specter,* 511 U.S. 462, 477 (1994) ("Where a statute … commits decisionmaking to the discretion of the President, judicial review of the President's decision is not available."). Here, Secretary Noem issued the 2025 Vacaturs and 2025 Terminations pursuant to the President's executive order. As the U.S. District Court for the District of Columbia has explained:

> [A]n unreviewable presidential action must involve the exercise of discretionary authority vested in the President; an agency acting on behalf of the President is not sufficient by itself. Since the Constitution vests the powers of the Executive Branch in one unitary chief executive officer, *i.e.*, the President, an agency always acts on behalf of the President. Nonetheless, there is a difference between actions involving discretionary authority delegated by Congress to the President and actions involving authority delegated by Congress to an agency. Courts lack jurisdiction to review an APA challenge in the former circumstances, regardless of whether the President or the agency takes the final action. However, "[w]hen the challenge is to an action delegated to an agency head but directed by the President,

5

a different situation obtains: then, the President effectively has stepped into the shoes of an agency head, and the review provisions usually applicable to that agency's action should govern." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001).

*Detroit Int'l Bridge Co. v. Gov't of Can.,* 189 F. Supp. 3d 85, 101-04 (D.D.C. 2016). *See also, Franklin v. Massachusetts*, 505 U.S. 788, 800-801 (1992) ("The President is not explicitly excluded from the APA's purview, but he is not explicitly included, either. Out of respect for the separation of powers and the unique constitutional position of the President, we find that textual silence is not enough to subject the President to the provisions of the APA."); *Tulare Cty. v. Bush,* 185 F. Supp. 2d 18, 28 (D.D.C. 2001) ("A court has subject-matter jurisdiction to review an agency action under the APA only when a final agency action exists. Because the President is not a federal agency within the meaning of the APA, presidential actions are not subject to review pursuant to the APA.") (citing *Dalton,* 511 U.S. at 470) (other internal citations omitted).

It is, of course, not to the prejudice of the unreviewability of the Secretary's action that it was pursuant to an order that the President had inherent constitutional authority to issue. Obviously, if actions committed to the President's discretion by a statute are unreviewable under the APA, actions he takes pursuant to his authority under the Constitution are at least equally so.

6

Here, Secretary Noem acted at the direction of the President and implemented his executive order when she vacated and terminated protective status designations for Honduras, Nicaragua, and Nepal. Accordingly, this court lacks jurisdiction to review her actions under the APA.

## II. This Court should harmonize the TPS statute with the President's inherent constitutional authority

A reviewing court should seek to harmonize Congress's enactments with the President's inherent constitutional authority to terminate TPS designations. *See United States v. Hansen*, 599 U.S. 762, 781 (2023) ("When legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict."). "When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)).

Of course, the "canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Id.* (internal quotation omitted). Here, the government has persuasively established at least one such permissible construction—that the TPS statute implicitly permits the Executive Branch to reconsider and vacate its prior TPS determinations. *See* Government's Brief at 35-

7

40. Thus, to avoid the conflict between the TPS statute and the President's inherent constitutional authority to protect the nation from foreign threats, this Court should construe the statute as permitting reconsideration of prior agency decisions.

### III. The TPS statute precludes judicial review

Congress clearly exempted TPS determinations from judicial review, and the district court accordingly erred when it dismissed the government's argument that the plain text of the statute exempts it from the APA. *E.g.* Order, 1 ER at 16-21. It further erred when applying the APA to the Secretary's "determinations" necessary to decide whether to terminate or extend protective status. *Id*. at 22-23.

The APA does not apply when "statutes preclude judicial review or agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). The prevailing presumption is that "unless there is persuasive reason to believe that Congress intended to preclude judicial review," courts should assume final agency actions are judicially challengeable. *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 155-56 (2025). The presumption may be overcome, however, "if the relevant statute precludes review." *Weyerhaeuser Co. v. United States Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018). That is the case here.

The TPS statute precludes judicial review of "*any determination* of the [Secretary] *with respect to* the designation, or termination or extension of a designation of a foreign state under this subsection." 8 U.S.C. § 1254a(b)(5)(A)

8

(emphases added). That is extraordinarily broad language. When the Supreme Court reviewed the construction of a similar preclusion of judicial review in 8 U.S.C. § 1252, the Court employed the most expansive application possible for the word "any." *Patel v Garland*, 596 U.S. 328, 338 (2022) (*citing Babb v. Wilkie*, 589 U.S. 399, 405 n.2 (2020)). In that case, as here, Congress used the word "any" in combination with the phrase "with respect to." The combination had the effect of "ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Patel*, 596 U.S. at 339. In this case, the effect is the same: to render any of the Secretary's "determinations" relating to TPS designations outside the scope of judicial review.

      The TPS statute lists the specific determinations the Secretary must make. Relevantly, the Secretary must "determine" when considering termination or extension of any TPS designation whether the conditions that gave rise to the TPS designation "continue to be met," or whether such circumstances no longer "meet the conditions for designation." 8 U.S.C. § 1254a(b)(3)(A)-(C). Similarly, the statute lists the preconditions the Secretary must find in order to grant TPS status, and does so in an exclusive list, by using the phrase "only if." Those conditions are:

- Ongoing armed conflict within the state;

9

- Earthquakes, floods, droughts, epidemics, or other environmental disasters "resulting in a substantial, but temporary, disruption of living conditions in the area affected;"
- An inability "to handle adequately the return to the state of aliens who are nationals to the state," with the foreign state "officially request[ing] designation;" or
- Extraordinary and temporary conditions preventing aliens of that state from returning in safety.

8 U.S.C. § 1254a(b)(1).

The TPS statute thus bars judicial review not only of the Secretary's ultimate determination, but also of all the subparts of the determination. This includes her decision on whether the relevant foreign state—in this case Honduras, Nicaragua, and Nepal—continue to satisfy the conditions necessary to extend protective status. *E.g. Bouarfa v. Mayorkas*, 604 U.S. 6, 18-19 (2024) (holding that *Patel*'s jurisdictional stripping provisions extend to the threshold factors necessary to make determinations "including when those findings are 'threshold requirements established by Congress' to access the relevant discretion.'").

Because the TPS statute expressly precludes judicial review of any of Secretary Noem's determinations, the district court clearly erred in concluding that the APA permitted such review.

10

## CONCLUSION

For the reasons stated herein, this Court should reverse the district court's order postponing the effective date of agency action.

DATED: October 27, 2025        Respectfully submitted,

/s/ Christopher J Hajec
Christopher J. Hajec
Matt A. Crapo
Jonathon P. Hauenschild
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
Telephone: (202) 328-7004

Attorneys for *Amicus Curiae*
Federation for American Immigration Reform

11

## CERTIFICATE OF COMPLIANCE

1. The foregoing brief complies with the type-volume limitation of Fed. Fed. R. App. P. 29(a)(5) because this brief contains 2,371 words, including footnotes, but excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ Christopher J. Hajec

## CERTIFICATE OF SERVICE

I certify that on October 27, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system. All parties were served electronically through the ACMS system.

/s/ Christopher J. Hajec